UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARLEY BRITTON,

       Plaintiff,                                    Hon. Ellen S. Carmody

v.

                                               Case No. 1:12-cv-1155

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On March 12, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 61 years of age on his alleged disability onset date. (Tr. 114, 148). He possesses a sixth grade education and worked previously as a drywall installer. (Tr. 22). Plaintiff applied for benefits on April 15, 2008, alleging that he had been disabled since March 18, 2008, due to depression and emotional impairments. (Tr. 114-16, 167).

Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 69-113). On August 17, 2010, Plaintiff appeared before ALJ Paul Jones with testimony presented by Plaintiff and a vocational expert. (Tr. 28-67). In a written decision dated September 3, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 16-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2008. (Tr. 16). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). The Court further notes that Plaintiff became eligible to receive Social Security Retirement Insurance Benefits in September 2008. (Tr.

3

16). While Retirement Insurance Benefits and Disability Insurance Benefits are separate benefit programs, administered pursuant to different criteria, a claimant "may only receive monthly benefits under one program, with the larger of the two monthly benefit amounts being the statutory default." *Cummins v. Barnhart*, 460 F.Supp.2d 1112, 1113 (D. Ariz. 2006).

## **RELEVANT MEDICAL HISTORY**

On January 27, 2006, Plaintiff participated in a CT examination of his chest the results of which revealed "moderate" chronic obstructive pulmonary disease (COPD). (Tr. 257). Treatment notes dated February 23, 2007, indicate that Plaintiff was experiencing "pain in his left upper back area." (Tr. 325). X-rays of Plaintiff's left shoulder were "normal." (Tr. 248). Treatment notes dated June 20, 2007, indicate that Plaintiff was continuing to experience back pain. (Tr. 322).

X-rays of Plaintiff's chest, taken November 28, 2007, revealed evidence of COPD. (Tr. 274). X-rays of Plaintiff's thoracic spine, taken December 17, 2007, revealed "compression fracture at the T10 level encompassing approximately 10 percent of the normal vertebral body height, which appears old, and mild degenerative changes." (Tr. 261). Treatment notes authored the same day, however, also reveal that Plaintiff "tends to be non-compliant with his meds." (Tr. 317-18). Treatment notes dated January 7, 2008, indicate that Plaintiff was continuing to experience "pain across his mid to upper back area." (Tr. 314).

On March 26, 2008, Plaintiff was examined by Dr. Gary Rich, a staff psychiatrist with Pine Rest Christian Mental Services. (Tr. 362-64). Plaintiff reported that he was experiencing "depression, difficulty getting along with people, irritability, and forgetfulness." (Tr. 362). Plaintiff reported that he has "been tried on 6 or 7 different antidepressants but has not really responded that

well to treatment." (Tr. 362). Plaintiff did acknowledge "having suicidal thoughts," but that "he is trying to control them." (Tr. 362). Plaintiff nevertheless reported that "he has not gotten any psychiatric treatment before." (Tr. 362). A mental status examination revealed the following:

> The patient is an adult male who is cooperative to the interview[er]. Hygiene is fairly good. Gait, speech, and level of psychomotor movement are within normal limits. Affect is of somewhat limited depth and somewhat constricted. Mood is somewhat anxious and depressed. He does report some ongoing suicidal thoughts but was able to contract for safety. He reports a history of panic attacks. His thought was coherent, and there were no loose associations. He denied auditory hallucinations, ideas of reference, or experiences of derealization. He does state that sometimes he sees things move out of the corner of his eye. He does acknowledge having racing thoughts, but also pointed out that a lot of times his thoughts are of low self-esteem. He acknowledged that he does have mood swings. He does have obsessive-compulsive traits especially when it comes to food preparation. He does tend to have a lot of nightmares, and some of them involve killing. He is easily startled. He was alert and oriented times 3. Memory, concentration, general fund of knowledge, and ability to abstract are grossly intact. Judgment is fair. Insight is somewhat limited. Assets: Acknowledges need for treatment.

(Tr. 363). Plaintiff was diagnosed with: (1) bipolar disorder; (2) posttraumatic stress disorder; and (3) panic disorder with agoraphobia and his GAF score was rated as 55.[1] (Tr. 364).

Treatment notes dated June 13, 2008, indicate that Plaintiff was "depressed and anxious," but exhibited "no psychotic trends." (Tr. 448). It was further noted that Plaintiff's medications were "not affective at current doses." (Tr. 448). Accordingly, Plaintiff's medication regimen was modified. (Tr. 448). Treatment notes dated July 8, 2008, indicate that Plaintiff's mood was "stable," but that he was experiencing "moderately high" anxiety. (Tr. 436). Treatment notes

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

dated August 14, 2008, indicate that Plaintiff was continuing to experience depression and anxiety. (Tr. 475). It was also noted that Plaintiff's medications were only "partially effective." (Tr. 475). Plaintiff's medications were again modified. (Tr. 475).

At the administrative hearing, Plaintiff testified that during the 1990s he worked as a drywall installer. (Tr. 38). Plaintiff characterized this as very heavy work that required him to lift 85 to 120 pounds. (Tr. 38). Plaintiff testified that he more recently performed work requiring him to lift up to 40 pounds, but that he was no longer able to perform even this level of work. (Tr. 39-41). With respect to the time period prior to the expiration of his insured status, Plaintiff reported that he was experiencing panic attacks which interfered with his ability to maintain employment. (Tr. 45-47). Plaintiff testified that he was also experiencing depression and back pain during this period of time. (Tr. 48-49, 55-58). Plaintiff reported that during this period of time he could lift "about eight pounds" and experienced difficulty sitting for significant lengths of time or walking significant distances. (Tr. 57-58).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled"

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from an affective disorder and an anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18-20). With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff retained the capacity to

---

must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform "a full range of work at all exertional levels, ranging from sedentary to very heavy work"[3] subject to the following limitations: (1) he is limited to "simple, routine, two-step tasks;" (2) he can only occasionally interact with co-workers or the public; and (3) he requires isolated work with only occasional supervision. (Tr. 20).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that if limited to the extent articulated in the ALJ's hypothetical question, there existed approximately 30,000 jobs in the state of Michigan which such an individual could perform. (Tr. 62-66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837

---

[3] Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567(d). Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 404.1567(e).

F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.         **The ALJ Properly Discounted Plaintiff's Subjective Allegations**

At the administrative hearing, Plaintiff testified that during the relevant time period in March 2008 his impairments were disabling and prevented him from working. The ALJ discounted Plaintiff's subjective allegations, a determination which Plaintiff now challenges.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*

standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the

10

weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

In assessing Plaintiff's credibility, the ALJ noted Plaintiff's inconsistent work history as well as the fact that during the time period Plaintiff alleges he was disabled he was receiving unemployment benefits. The ALJ properly considered both circumstances in evaluating Plaintiff's credibility. *See, e.g., Matula v. Commissioner of Social Security*, 2013 WL 6713829 at *7 (E.D. Mich., Dec. 20, 2013) (it is "appropriate for ALJ to consider poor work history when evaluating credibility"); *Workman*, 105 Fed. Appx. at 801-02 ("[a]pplications for unemployment and disability benefits are inherently inconsistent," thus there exists "no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work"). In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

II.     **The ALJ Properly Considered the Rating Decision by the Department of Veterans Affairs**

On December 12, 2008, the Department of Veterans Affairs issued a decision on Plaintiff's claim for service-related disability benefits. (Tr. 511-18). Plaintiff served in the United States Army from November 1967 through August 1968. (Tr. 514). Based on evidence that Plaintiff, during his Army service, experienced emotional difficulties, the Department of Veterans Affairs determined that Plaintiff suffered a 30 percent service connected disability. (Tr. 514-17).

Plaintiff argues that the ALJ failed to properly consider this determination.

As the ALJ correctly observed, the determination by the Department of Veterans Affairs is not binding on the Social Security Administration. As the relevant regulation provides:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504; *see also*, *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 510 (6th Cir., Oct. 4, 2013) (decisions by the Department of Veterans Affairs are not binding on the Social Security Administration; such are entitled to consideration, but no particular weight).

The ALJ considered the decision by the Department of Veterans Affairs, but found such unpersuasive and entitled to little weight. Considering that the decision in question was issued well after the expiration of Plaintiff's insured status and concerned Plaintiff's condition during a period of time not relevent in the present matter, the Court finds that the ALJ adequately considered the decision by the Department of Veterans Affairs. Accordingly, Plaintiff's argument is rejected.

### III. The ALJ's RFC Determination is not Supported by Substantial Evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Branon v. Commissioner of Social Security*, 539 Fed. Appx. 675, 677 (6th Cir., Oct. 2, 2013).

As noted above, the ALJ concluded that Plaintiff retained the ability to perform "a full range of work at all exertional levels, ranging from sedentary to very heavy work" subject to certain non-exertional limitations. Plaintiff argues that the ALJ's RFC fails to sufficiently account for his impairments and the limitations imposed by such. As the evidence discussed reveals, while Plaintiff may very well have retained the capacity to perform light or medium work during the time period in question, the conclusion that he retained the ability to perform heavy or very heavy work is simply not supported by the record. The Court concludes, therefore, that the ALJ's RFC determination is not supported by substantial evidence.

### IV. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). Plaintiff argues that he is disabled pursuant to the grids at Step V of the sequential evaluation process. The Court disagrees.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404,

Subpart P, Appendix 2, § 200.00.

Plaintiff was 61 years of age on the date his insured status expired which for purposes of the grids is characterized as "an individual closely approaching retirement age." *See* 20 C.F.R. § 404.1563(e). The ALJ found that Plaintiff possesses a "marginal" education. (Tr. 22). The ALJ further found that Plaintiff's previous work was semi-skilled, but that Plaintiff "has no transferrable work skills." (Tr. 22).

With respect to sedentary work, the relevant regulations provide that "[t]he adversity of functional restrictions to sedentary work at advanced age (55 and over) for individuals with no relevant past work or who can no longer perform vocationally relevant past work and have no transferable skills, warrants a finding of disabled in the absence of the rare situation where the individual has recently completed education which provides a basis for direct entry into skilled sedentary work." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.00(d). Moreover, the grids provide that an individual of Plaintiff's age, education, and work experience, if limited to the performance of sedentary work, is considered disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.02.

With respect to light work, the regulations provide that "for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.00(c). The grids further provide that an individual of Plaintiff's age, education, and work experience, if limited

to the performance of light work, is considered disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.02.

Contrary to Plaintiff's argument, however, he would *not* be considered disabled under the grids if he were found capable of performing medium work. With respect to medium work, the regulations provide that "[e]ven the adversity of advanced age (55 or over) and a work history of unskilled work may be offset by the substantial work capability represented by the functional capacity to perform medium work." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 203.00(b). The grids specifically provide that an individual of Plaintiff's age, education, and work experience, if limited to the performance of medium work, is not disabled. 20 C.F.R., Part 404, Subpart P, Appendix 2, § 203.04.

In sum, given's Plaintiff's various vocational factors, he would be considered disabled under the grids if he were limited to light or sedentary work, but not disabled if he were limited to medium work. While it seems clear to the Court that Plaintiff cannot perform heavy or very heavy work, there does not exist compelling evidence that Plaintiff was unable, during the time period in question, to perform medium work. To find that Plaintiff is disabled under the grids would require the Court to engage in the type of fact-finding that it is neither qualified nor authorized to perform. Instead, this matter must be remanded to the Commissioner for further consideration.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

A judgment consistent with this opinion will enter.


Date: March 24, 2014                             /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge